**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DONNA PERSINO, | ) |
| | ) |
| | ) Case No. 1:14-cv-5285 |
| Plaintiff, | ) |
| | ) Judge |
| vs. | ) |
| | ) |
| SIGALOS & ASSOCIATES, LTD.; | ) |
| CAROLYN SIGALOS; and JOHN SIGALOS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT

Now comes the plaintiff, DONNA PERSINO, by her attorney, THE LAW OFFICES OF MICHAEL BARTOLIC, LLC, and complaining against the defendants, she states:

### NATURE OF THE ACTION

1.     This case is about an employee who was a participant in an employer sponsored 401(k) plan voicing her concerns to management that the employer was not (1) timely contributing employees' deferrals to the plan, and (2) not making the employer's own required matching contributions, and being fired less than an hour later for voicing such concerns.

2.     When the late payment of elective employee deferrals on behalf of Plaintiff and other participants in the 401(k) plan were not forwarded to the 401(k) trust these deferrals became plan assets.  Defendants, through their exercise and control over the Plan and its assets, used those plan assets to fund the employer's business operations in violation of ERISA, resulting in lost earnings to the plaintiff and other plan participants on their 401(k) account balances.

3.     This is a claim arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), against the defendants for losses to the plan under 29 U.S.C. § 1132(a)(2) due to breaches of fiduciary duty for engaging in prohibited transactions regarding the plan assets, and for violation of 29 U.S.C. § 1140 resulting from Plaintiff's unlawful termination.

4.     This claim is seeking (1) remedies under 29 U.S.C. § 1132(a)(2) for losses to the 401(k) plan caused by Defendants' breach of fiduciary duty in not timely remitting employee deferrals and the employer's own matching contributions, (2) remedies under 29 U.S.C. § 1140 caused by Defendants' unlawful termination of Plaintiff's employment because she made an inquiry regarding the employer's failure to remit the employee deferrals and matching contributions, and under the Illinois Wage Payment and Collection Act for unused accrued vacation and sick time that was not paid to Plaintiff with her final paycheck.

## JURISDICTION AND VENUE

5.     Jurisdiction of the Court is based upon ERISA, and in particular, 29 U.S.C. § 1132(e) and 1132(f). Those provisions give the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132(a). In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.  This Court has jurisdiction over Plaintiff's claim under the Illinois Wage Payment Collection Act under 28 U.S.C. § 1367(a) because it is related to Plaintiff's claims arising under Federal Question.

6.     Venue is proper under 29 U.S.C. § 1132(e)(2), as the Defendants are located, the Plan is administered, and all of the acts complained of in this action occurred within the jurisdiction of the United States District Court for the Northern District of Illinois.

## THE PARTIES

7.      Plaintiff, DONNA PERSINO, (hereinafter "Persino") is a former employee of Sigalos & Associates, Ltd. and was at all relevant times a participant in the Sigalos & Associates, Ltd. 401 (k) Profit Sharing Plan (herein "the Plan"). A copy of the Plan is attached as Exhibit 1. Persino has standing to bring this lawsuit under 29 U.S.C. § 1132(a).

8.      Defendant SIGALOS & ASSOCIATES LTD. (hereinafter "Sigalos & Associates") is the sponsor and Plan Administrator of the Plan. Sigalos & Associates is a fiduciary of the Plan by virtue of its role as Plan Administrator because it exercises authority and control respecting management or disposition of plan assets in deciding if and when Sigalos & Associates would remit employee deferrals and employer matching contributions to the Plan's trust account. Sigalos & Associates is also a party in interest with respect to the Plan, as that term is defined in 29 U.S.C. § 1002(14)(A) and (C).

9.      Defendant CAROLYN SIGALOS, was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because she exercised authority and control respecting management or disposition of plan assets in deciding if and when Sigalos & Associates would remit employee deferrals and employer matching contributions to the 401(k) plan's trust account. Carolyn Sigalos was also a party in interest with respect to the Plan within the meaning of 29 U.S.C. §§1002(14)(A), and was a named trustee of the Plan.

10.      Defendant JOHN SIGALOS, was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21)(A) because he exercised authority and control respecting management or disposition of plan assets in deciding if and when Sigalos & Associates would remit employee deferrals and employer matching contributions to the 401(k) plan's trust account. John Sigalos

was also a party in interest with respect to the Plan within the meaning of 29 U.S.C. §§1002(14)(A) and was a named trustee of the Plan.

## STATEMENT OF FACTS

11.　　Persino worked for Sigalos & Associates from December 20, 2002 through September 20, 2013.

12.　　Sigalos & Associates implemented the Plan on October 1, 1994.

13.　　By its own terms, the Plan requires Sigalos & Associates to make "safe harbor" matching contributions of 100% of employee salary deferrals up to 3% of compensation, and 50% of employee salary deferrals between 3% and 5% of compensation, for a maximum match of 4% of compensation.

14.　　Once Persino became eligible to participate in the Plan, she elected to make salary deferrals via payroll deduction each pay period.

15.　　From 1994 through 2010, Sigalos & Associates remitted employees' elective salary deferrals to the Plan's trust fund in a timely manner, always within seven business days of when the money would have otherwise been payable to the employees in cash, and usually the same day as payroll was paid to employees.  It also timely remitted the required employer matching contributions.

### Sigalos & Associates Stops Making Timely Contributions to the Trust

16.　　In 2011, Sigalos & Associates began making late contributions of employee elective deferrals and stopped making its own required matching contributions to the plan.

17.　　Sigalos made at least 41 late payments for its employees' elective payroll deferrals between October 2011 and May 2013, sending the contributions in batches of the

4

payroll periods to which they related, in some instances sending months of employee deferrals at one time.

18.     When Sigalos & Associates first began making late contributions of employees' salary deferrals in 2011, Persino asked Carolyn Sigalos why Sigalos & Associates was no longer making the contributions right away as it had in the past.

19.     Carolyn Sigalos responded that the employer is permitted to remit the deferrals in batches.

20.     Employee deferrals become "plan assets" as of the earliest date on which such deferrals can reasonably be segregated from the employer's general assets.  29 C.F.R. § 2510.3-102(a)(1).

21.     For an employer with fewer than 100 participants in a 401(k) plan, employee deferrals become "plan assets" if they are not deposited in the trust within 7 business days of when the funds would have been payable to the participant in cash.  29 C.F.R. § 2510.3-102(a)(2).

22.     Because the deferrals were not timely transmitted to the trust within 7 business days of when the funds would be payable to Persino (and other participants) in cash, they became plan assets.

23.     Under 29 U.S.C. § 1106(a)(1)(D), a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect use by a party in interest of any assets of the plan.

24.     The fiduciaries of the Plan exercising control over those plan assets engaged in prohibited transactions and breached their fiduciary duty to participants by using plan assets—

the untimely remitted employee salary deferrals and unremitted matching contributions—to fund the general operations of Sigalos & Associates, a party in interest under ERISA.

25.     The fiduciaries' untimely remittance of the participant's salary deferrals and employer matching contributions directly caused the participants, including Persino, lost earnings on those assets, which if timely deposited would have yielded a rate of return in the participants' accounts.

26.     Employer safe harbor matching contributions must be deposited in the trust no later than 12 months following the plan year to which they relate, meaning the 2009 matching contributions had to be deposited by the end of 2010, the 2010 matching contributions had to be deposited by the end of 2011, and so on.

27.     Beth Corcoran was the Sigalos's Account Manager at National Retirement Services, serving at the third-party administrator for the Plan.

28.     Ms. Corcoran, though various emails and letters, advised Carolyn Sigalos that the required employer Safe Habor Match Contributions for 2009, 2010, and 2011 had not been deposited. (Ex. 2).

29.     In a letter dated October 18, 2012 and personally addressed to Carolyn Sigalos, Ms. Corcoran threatened to withdraw as third party administer with the following:

> Although numerous requests have been made, as of this date, Sigalos & Associates, LTD still have not made the Safe Harbor contribution for the plan years 2009, 2010, and now 2011. Furthermore, you have not responded to our recommendation to seek assistance in filing the matter with the IRS under the Federal EPCRS program. It is therefore necessary for National Retirement Services, Inc. (NRS), acting as your third party administrator, to resign effective immediately.

(Ex. 2 p.9).

30.     In annual reporting to the Department of Labor, Plan Administrators must disclose whether the sponsor has failed to timely remit any employee salary deferrals to the trust.

31.     In both the 2011 and 2012 Form 5500s, Carolyn Sigalos represented to the Department of Labor that Sigalos & Associates had not failed to timely remit any such employee salary deferrals, which was false. (Exs. 3–4).

**Persino Gets Fired for Inquiring About the Untimely Contributions**

32.     On September 20, 2013, Persino expressed to her employer that she was unhappy with Sigalos & Associates' failure to timely remit her salary deferrals to the Plan and its failure to make the required employer matching contributions for the past several years.

33.     Persino informed Carolyn Sigalos that she was "tired of making interest free loans to the company."

34.     Carolyn Sigalos reacted by inquiring what Persino meant by "making interest free loans" to the company.

35.     Persino responded by informing Carolyn Sigalos that Sigalos & Associates had been making untimely contributions of employee salary deferrals to the Plan and had not been making its matching contributions.

36.     Immediately after Persino's comment, Carolyn Sigalos left the conversation.

37.     Upon information and belief, Carolyn Sigalos discussed Persino's complaint with John Sigalos, the company President, and the two jointly decided to terminate Persino's employment.

38.     Realizing they would terminate her employment and that Persino was aware of ERISA violations, Carolyn Sigalos and John Sigalos also discussed attempting to get Persino to

sign a confidentiality agreement before terminating her to prevent her from disclosing any of the ERISA violations to the Department of Labor.

39.     Thirty minutes after Persino commented on Sigalos & Associates' untimely Plan deposits, Carolyn Sigalos returned and demanded that Persino sign a confidentially agreement, a copy of which is attached. (Ex. 5)

40.     Persino refused to sign the confidentiality agreement.

41.     When Persino refused to sign the agreement, Carolyn Sigalos immediately fired Persino.

42.     Carolyn Sigalos's termination of Persino was in direct retaliation for Persino's comments regarding Sigalos & Associates' failure to make timely contributions to the Plan.

43.     After terminating Persino, Sigalos & Associates failed to pay Persino her unused accrued paid time off in the form of vacation time and sick days.

44.     On February 19, 2014 Persino mailed a letter to Carolyn Sigalos, wherein Persino made a demand for reinstatement with full back pay to her termination date of September 20, 2013, along with the lost earnings she experienced as a direct result of Sigalos' failure to make timely deferrals and safe harbor contributions, and her unpaid vacation and sick time.  (Ex. 6).

45.     Carolyn Sigalos received Persino's letter on February 20, 2014. (Ex. 6 p. 5).

46.     Carolyn Sigalos failed to respond to Persino's letter.

47.     Persino sent Carolyn Sigalos a follow up letter dated May 22, 2014, asking her to respond to the demand for benefits or that administrative remedies would be deemed exhausted. (Ex. 7).

48.     Two weeks later, on June 5, 2014, Persino received a letter stating that Sigalos & Associates had contributed Persino's safe harbor match contributions to the Plan for years 2009,

2010, and 2011, but (1) there was no deposit for 2012, which was past due, and (2) there was no deposit to remedy the lost earnings Persino suffered as a result of the late deposit. (Ex. 8).

49.     For example, the S&P 500 experienced growth of 2.1% in 2011, 15.89% in 2012, and 32.15% in 2013.  Had the matching contribution deposits been timely made, Persino and other participants would have significantly more money in their accounts.

50.     The response did not state Persino had any right to appeal Carolyn Sigalos' decision any further.

51.     None of the other demands by Persino were addressed, including but not limited to the lost earnings that the participants in the Plan suffered as a direct result of the untimely contributions of salary deferrals and safe harbor matches, the claim for Defendants' violation of 29 U.S.C. § 1140 in firing Persino, or Persino's request for her unpaid accrued vacation and sick time.

52.     To the extent any exhaustion of administrative remedies is required for any of Persino's claims, those avenues of appeal have been exhausted or are deemed exhausted.

53.     All conditions precedent to the filing of this action have been performed or have occurred.  Plaintiff has exhausted her administrative remedies.

## COUNT I—RELIEF UNDER 29 U.S.C. § 1132(a)(2)— Against All Defendants

54.     Persino realleges and incorporates by reference herein paragraph 1–53 of the preceding allegation.

55.     Persino met all required conditions to enforce her rights under the Plan.

56.     To the extent required to do so, Persino properly exhausted any required administrative claim procedure prior to filing suit in Court.

57.     Under 29 U.S.C. § 1132(a)(2), a civil action may be brought by a participant or beneficiary for appropriate relief under § 1109. Under § 1109, any fiduciary who has breached any responsibility, obligation, or duty imposed upon fiduciaries shall be personally liable to make good to the plan any losses to the plan resulting from that breach of fiduciary duty.

58.     Under ERISA, fiduciaries are prohibited from engaging in the prohibited transactions listed in 29 U.S.C. § 1106.

59.     Defendants Sigalos & Associates, Carolyn Sigalos, and John Sigalos all engaged in prohibited transactions and breached fiduciary duties to the plan by (1) not timely remitting employee salary deferrals and (2) not making required employer matching contributions, resulting in Sigalos & Associates using plan assets for its own benefit, rather than for the benefit of plan participants and beneficiaries.

60.     As a direct and proximate result of the Plan's failure to make timely deferrals and safe harbor matches, the plan has suffered losses in the form of missing contributions and lost earnings on any contributions not made or not timely made.

WHEREFORE, Persino prays for the following relief as to this count of the complaint:

A.     That the Court enter judgment in favor of Persino and against the Defendants, and order Defendants to restore to the plan all required employer matching contributions for years 2009, 2010, 2011, and 2012;

B.     Order Defendants to restore to the plan lost earnings on those untimely employer matching contributions;

C.     Order Defendants to restore to the plan lost earnings on the untimely remittances of employee salary deferrals; and

D.     Order that Persino recover any and all other relief to which she may be entitled, as well as attorneys' fees and the costs of suit.

**COUNT II—RELIEF UNDER 29 U.S.C. § 1140—**
**Against All Defendants**

61.     Persino realleges and incorporates by reference herein paragraph 1–53 of the preceding allegation.

62.     Persino met all required conditions to enforce her rights under the Plan.

63.     To the extent required to do so, Persino properly exhausted any required administrative claim procedure prior to filing suit in Court.

64.     Under 29 U.S.C. § 1140 "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act."

65.     Under *George v. Junior Achievement of Central Indiana*, 694 F.3d 812, 817 (7th Cir. 2012), when Persino engaged in her exchange with Carolyn Sigalos regarding Sigalos & Associates not timely remitting employee salary deferrals or making employer matching contributions to the plan, Persino gave information in an inquiry.

66.     In firing Persino immediately following Persino's giving information regarding Sigalos & Associates' failures to make timely contributions to the plan, all Defendants violated 29 U.S.C. § 1140.

WHEREFORE, Persino prays for the following relief as to this count of the complaint:

A.     That the Court enter judgment in favor of Persino and against the Defendants, place Persino in the same position she would be in as if the statutory violation had not occurred,

including Ordering Defendants to reinstate Persino's employment status retroactive to September 20, 2013 with backpay;

B.       Order that Persino be permitted to make salary deferrals to the plan at her previous rate of $100 per week for the time period following the illegal discharge and order Defendants to make any required matching contributions on those salary deferrals, as well as any applicable discretionary profit sharing contributions that were or will be made for other employees for years 2013 and 2014;

C.       Order Defendants to restore to the plan lost earnings on the untimely remittances of employee salary deferrals; and

D.       Order that Persino recover any and all other relief to which she may be entitled, as well as attorneys' fees and the costs of suit.

## COUNT III—RELIEF UNDER ILLINOIS WAGE PAYMENT COLLECTION ACT FOR UNPAID ACCRUED VACATION AND SICK TIME— Against Sigalos & Associates and Carolyn Sigalos

67.      Persino realleges and incorporates by reference herein paragraph 1–53 of the preceding allegation.

68.      Under the Illinois Wage Payment and Collection Act, an employer must include in an employee's final paycheck payment for all unused accrued vacation or sick time payable at the employee's final wage rate.

69.      Sigalos & Associates' policy for paid time off was such that it granted employees paid time off in recognition of the prior year's service, such that at the beginning of the year vacation and sick days were granted, they were fully accrued.

70.      At the beginning of 2013, Persino had 40 hours of sick time and 40 hours of vacation, which accrued from her service in 2012.

71.     Up to her termination date, Persino used 28 hours of sick time and 12.5 hours of vacation time, leaving unused accrued sick time of 12 hours and vacation time of 27.5 hours. This was reflected on her September 16, 2013 paystub.  (Ex. 9).

72.     Sigalos & Associates failed to pay to Persino 27.5 hours of unused accrued vacation time and 12 hours of unused accrued sick time on her final paycheck issued September 23, 2013.   Persino's hourly rate was $26.85 per hour, leaving Persino with unpaid wages of $1060.58.

73.     Carolyn Sigalos processed payroll for Sigalos & Associates and decided not to pay Persino for her unused accrued vacation and sick time.

74.     The statute imposes liability on any person responsible for deciding not to pay the required compensation, making both Sigalos & Associates and Carolyn Sigalos liable.

75.     The statute also imposes a 2% penalty per month for the time the compensation was unpaid.

76.     The statute imposes mandatory attorneys' fees upon a party liable for unpaid wages under the Act.

WHEREFORE, Persino prays for the following relief as to this count of the complaint:

A.     That the Court enter judgment in favor of Persino and against the Defendants Sigalos & Associates and Carolyn Sigalos, awarding Persino all her accrued and unused but unpaid vacation and sick time in the amount of $1060.58;

B.     Order that Sigalos & Associates and Carolyn Sigalos pay Persino the statutory penalty of 2% of the amount of unpaid vacation and sick time per month dating back to September 23, 2013;

      C.      Order that Persino recover any and all other relief to which she may be entitled, as well as attorneys' fees and the costs of suit.

Respectfully Submitted,

By:    /s/ Michael Bartolic_____

One of the Attorneys for the Plaintiff

Michael Bartolic
The Law Offices of Michael Bartolic, LLC
29 South LaSalle Street
Suite 1120
Chicago, Illinois  60603
Tel: 312-635-1600
Fax: 312-635-1601
ARDC No. 6285708